UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

TERRY DAUM,

                                                                  13-CV-88(Sr)

                              Plaintiff,

v.

SERGEANT JOHN DOE, et al.,

                              Defendants.

_____

<u>**DECISION AND ORDER**</u>

Plaintiff, Terry Daum, commenced this action pursuant to Title 42, United States Code, Section 1983 alleging that he was subjected to an excessive use of force in violation of his right to be free from cruel and unusual punishment.  Dkt. #6. Presently pending is plaintiff's motion to compel disclosure of the New York State Inspector General's report and the contents of the investigation file relating to the incident which is the subject of plaintiff's complaint.  Dkt. #15.

Specifically, plaintiff alleges that on November 20, 2011, at 7:15 p.m., while he was housed at the Attica Correctional Facility, he was assaulted by Correction Officers Holtz and Zehler and two other unidentified correction officers.  Plaintiff alleges that defendant Zehler threatened him not to report the incident or they could easily kill him. Dkt. #6, ¶20.  Following the incident, plaintiff alleges that he was taken to the Erie County Medical Center where he was diagnosed with an "orbital fracture with inferior rectus muscle entrapment."  *Id*. at ¶21.  In addition, plaintiff alleges that he later

required surgery.  Plaintiff further alleges,

> Because defendants threatened to kill Mr. Daum, and they had already badly beaten him and he was in severe pain, he told medical staff that he fell.
>
> Mr. Daum feared for his life and believed that officers Zehler, Holtz and the unnamed officers and sergeant would retaliate against Mr. Daum with deadly physical force if he reported the incident while at Attica Correctional Facility based on this assault which caused serious injury.

*Id*. at ¶¶22-23.  Plaintiff was transferred to the Sing Sing Correctional Facility on January 23, 2012.  *Id*. at ¶24.  On January 27, 2012, plaintiff submitted a grievance concerning the November 20, 2011 assault.  *Id*. at ¶25.   On February 1, 2012, plaintiff alleges that his grievance was denied as untimely and the grievance supervisor recommended that he contact the Inspector General.  *Id*. at ¶26.  Thereafter, plaintiff's complaint alleges that his family members contacted the Inspector General's Office.  *Id*. at ¶27.

          As noted above, by the instant motion, plaintiff seeks the disclosure of the Inspector General's report and the contents of the investigation file regarding the November 20, 2011 incident which is the subject of plaintiff's complaint.  Dkt. #15.  In opposition to the instant motion, counsel for the defendants states that a copy of an Inspector General file was provided to him on October 8, 2013.  Dkt. #17, ¶11.  A complete copy of that file, bearing Bates Nos. 001696-001712, has been provided to the Court, *in camera*, for its review.  As detailed in defendants' response,

> As the Court can see, accompanying the IG file was a letter from the IG, which reads, in part:

> *Several pages contained within the Inspector*
> *General's Investigative file have been marked*
> *"**ATTORNEY EYES ONLY**." <u>These documents</u>*
> *<u>are being forwarded to you for informational</u>*
> *<u>purposes only and should not be released to</u>*
> *<u>anyone else.</u>  An in-camera inspection by a*
> *judge is, of course, permissible.  Should you*
> *need to release this information to someone*
> *else, please do not do so without contacting*
> *this office first.*

Dkt. #17, ¶12 (emphasis and italics in original).  Thereafter, counsel for the defendants

engaged in discussions with the New York Department of Corrections and Community

Supervision ("DOCCS") concerning the release of the IG file.  *Id*. at ¶13.  As a result of

the discussions, DOCCS agreed that certain portions of the IG file could be released to

plaintiff's counsel.  *Id*. at ¶14.  In fact, on November 25, 2013, defendants provided

plaintiff's counsel with copies of the "raw evidentiary parts of the IG file, which were

designated as Bates Nos. 1703-1712."  *Id*. at ¶15.  Therefore, seven pages were not

disclosed consistent with DOCCS request (001696-001702).  *Id*. at ¶16.  As was noted

in defendants' response to the instant motion, the documents which were withheld

> do not include any statements of witnesses or other
> evidence collected by the IG investigator.  What was
> withheld includes the investigator's summary of the evidence
> collected as well as internal IG documentation.  Anything
> which is relevant to plaintiff's claim, or which could lead to
> relevant admissible evidence, is already in possession of the
> plaintiff.

*Id*. at ¶¶17-18.  Finally, the Court notes that in December 2013, the parties executed a

Confidentiality Agreement regarding discovery of documents.  Dkt. #17, pp.43-46.

As a general matter,

> [t]he Inspector General's Office serves as an investigative body and prepares reports which are highly confidential by nature.  Disclosure of these reports to an inmate would undoubtedly pose a grave threat to the security of [a correctional facility].  Inspector General reports contain inmate names, names of informants, summaries of interviews of correction officers and opinion letters, all of which concern matters of a highly sensitive nature.  Should this type of information be available to inmates and ultimately circulated throughout the prison, the security of the prison would be in serious danger.

*Watson v. Scully*, No. 87 CIV. 0571(CSH), 1988 WL 73390 at *2 (S.D.N.Y. July 1, 1988).  Here, a portion of the IG file was previously disclosed to plaintiff and the withheld pages, seven pages in total, include:  the enclosure letter from DOCCS to Assistant Attorney General Zimmerman dated October 8, 2013 (001696); a Report of Complaint Progress form indicating the dates  and the actions taken (001697); the one-page Investigative Report (001698); a listing of the Contents of the Case File (001699); a two-page computer generated document summarizing the actions taken, the identity of the person making the referral (plaintiff's uncle), the result of the investigation, the inmates interviewed (plaintiff) and a description of the incident (001700-001701); a one-page computer generated document, similar to 001700, indicating the assignment of an investigator (001702).

        This Court has conducted a careful review of the withheld pages of the IG file (001696-001702) *in camera* and for the following reasons directs that pages 001697-001702 be disclosed to counsel for the plaintiff subject to the terms of the parties' December 2013 Confidentiality Agreement.  The Court is mindful of the

concerns enumerated by the District Court in the Southern District of New York with respect to the disclosure of IG reports in general.  However, after its *in camera* review of the records at issue herein, this Court concludes that there is nothing contained in those records that identify inmate names, names of informants, summaries of interviews of correction officers and opinion letters, or any other matters of a highly sensitive nature.  The information contained within the subject documents is information already known to the plaintiff and if disclosed, will not pose any threat to the security of the prison.  The Court does not see any evidentiary value in the disclosure of the October 8, 2013 letter from Vernon Fonda, Chief of Investigation at DOCCS to AAG Zimmerman enclosing the IG file (001696).  Therefore, that page (001696) may be withheld from disclosure and the remaining pages (001697-001702) shall be disclosed to plaintiff subject to the terms of the Confidentiality Agreement.

**SO ORDERED.**

DATED:      Buffalo, New York
            February 21, 2014

*s/ H. Kenneth Schroeder, Jr.*
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**